Bertram A. WATSON and R. J. Shea, Deputy Commissioner, Appellants,

v.

GULF STEVEDORE CORPORATION et al., Appellees.

No. 25007.

United States Court of Appeals Fifth Circuit.

June 28, 1968.

650

W. Jiles Roberts, Houston, Tex., for
appellant Bertram A. Watson.

James R. Gough, Asst. U. S. Atty., Houston, Tex., Morton Hollander, Leonard Schaitman, Attys., Dept. of Justice, Washington, D. C., Edwin L. Weisl, Jr., Asst. Atty. Gen., Morton L. Susman, U. S. Atty., for appellant R. J. Shea.

Carl O. Bue, Jr., Houston, Tex., Royston, Rayzor & Cook, Houston, Tex., of counsel, for appellees.

Before COLEMAN and GODBOLD, Circuit Judges, and RUBIN, District Judge.

RUBIN, District Judge:

In the breast of the litigant who has suffered an adverse factual decision by an administrative body, hope springs eternal that he can persuade a reviewing court to overrule it. Here the hope has found fulfillment and the employer of Watson, an injured longshoreman, has persuaded an experienced and able trial judge to overturn a determination by the deputy commissioner under the Longshoremen's and Harbor Workers' Compensation Act that Watson suffers permanent total disability. The employee in turn seeks reversal of the district judge's decision.

It is uncontested that at the time of the hearing Watson was disabled and that his disability was then total within the concept of the Act. But since the undisputed medical testimony indicates that Watson is likely to be able to return to work, the employer says his disability is not permanent,[1] and the District Judge found not only that his condition is a temporary one but also that there is no substantial evidence on the record as a whole to support a contrary conclusion.

No one can doubt that an adequate system of judicial review is essential to proper functioning of an administrative system. But in a complex society whose legislators have seen fit to create a host of administrative agencies functioning throughout the economy, the administrative-judicial system would defeat its own purpose and break down of its own weight if every decision were reviewed *de novo*. Reviewing courts see no witnesses. They try a case on a cold record. They know that judges do not always agree among themselves. They recognize that in human affairs rational men may differ and that the final answer is merely the last and not always the best one. Moreover, judges may lack the expertise that is attributed to administrative tribunals. Both legislators and courts agree therefore that, if administrative bodies are to serve their most useful function, they must not be restricted to the role of examiners who merely hear the evidence and reach a conclusion that is only tentative until it is approved or rejected by a court. Hence, both statute[2] and court decision have established the principle that the reviewing court should not substitute its own judgment for the factual determinations of the administrative agency. The settled formula is that the decision of the administrative agency should be accepted unless there is no substantial evidence on the record as a whole to support it.[3]

This formula is not like a standard of weights and measures. We cannot put a yardstick beside the deputy commissioner's decision and ease the judicial task by seeing only whether the evidence was an inch too short. Instead we must examine

---

1. The difference is important. Section 14 (m) of the Act limits the employer's liability to $24,000 for any one "injury," but that limit is inapplicable to an injury resulting in permanent total disability. Section 14(m), 33 U.S.C.A. § 914(m) (1961). Watson has been paid all the benefits that he is due under the Act if his disability is temporary and total. If his disability is adjudged to be permanent, he is entitled to additional benefits "during the continuance of such total disability." Section 8, 33 U.S.C.A. § 908(a).

2. 5 U.S.C.A. § 551 et seq.

3. As Judge Connally correctly states, "The award is to be set aside only if unsupported by substantial evidence upon review of the entire record. [O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951); Strachan Shipping Co. v. Calbeck, 190 F. Supp. 255 (S.D.Tex.1961) and cases there cited.]" See also the cases cited in the body of this opinion.

the decision in the light of the record, with reason as its measure.

■ "Our reasoning begins with the basic proposition that the Longshoremen's and Harbor Workers' Compensation Act is to be liberally construed in favor of the injured employee. Voris v. Eikel, 1953, 346 U.S. 328, 74 S.Ct. 88, 98 L.Ed. 5; Pillsbury v. United Engineering Co., 1952, 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225." McClendon v. Charente Steamship Company, 5 Cir., 1965, 348 F.2d 298, 301.[4]

The Longshoremen's and Harbor Workers' Compensation Act[5] provides for the filing of a "claim for compensation." "[T]he deputy commissioner shall have full power and authority to hear and determine all questions in respect of such claim."[6] The Act provides that a compensation order may be set aside "if not in accordance with law."[7] This statutory provision implies that when a court reverses an administrative determination under the Act "the reviewing court's function is exhausted when it becomes evident that the Deputy Commissioner's choice has substantial roots in the evidence and is not forbidden by the law." Cardillo v. Liberty Mutual Insurance Company, 1947, 330 U.S. 469, 478, 67 S. Ct. 801, 807, 91 L.Ed. 1028. The *Cardillo* opinion pointed out that, in administering the Act, the deputy commissioner must necessarily draw inferences. The scope of judicial review of his inferences is "sharply limited."

■ Although *Cardillo* dealt with determination of whether a particular injury arose out of and in the course of employment, it states clearly the principles to be followed in connection with judicial review of administrative decisions under the Act. "If supported by evidence and not inconsistent with the law, the Deputy Commissioner's inference * * * is conclusive. No reviewing court can then set aside that inference because the opposite one is thought to be more reasonable; nor can the opposite inference be substituted by the court because of a belief that the one chosen by the Deputy Commissioner is factually questionable." Id. at 330 U.S. 477–478, 67 S.Ct. 806.

■■ It has therefore been held repeatedly that, if the deputy commissioner's findings as to the extent of the disability suffered by an injured worker are supported by substantial evidence, his conclusions are final. Southern Stevedoring Co., Inc. v. Henderson, 5 Cir., 1949, 175 F.2d 863; Godfrey v. Henderson, 5 Cir., 1955, 222 F.2d 845; see also Walsh Stevedoring Co. v. Henderson, 5 Cir., 1953, 203 F.2d 501. What is substantial evidence in this sense was defined by the Supreme Court even before adoption of the Administrative Procedure Act. It is evidence that affords "a substantial basis of fact from which the fact in issue can be reasonably inferred. * * * [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." NLRB v. Columbian Enameling and Stamping Co., 1939, 306 U.S. 292, 299–300, 59 S.Ct. 501, 505, 83 L.Ed. 660. In sum, the "scope of review of jury verdicts and of administrative findings is the same. * * *." 4 Davis, Administrative Law Treatise § 29.02,

---

4. See also Reed v. S.S. Yaka, 1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448; Delta Steamship Lines, Inc. v. Donovan, 5 Cir., 1966, 356 F.2d 940; O'Keeffe v. Atlantic Stevedoring Company, 5 Cir., 1965, 354 F.2d 48; Calbeck v. A. D. Suderman Stevedoring Co., 5 Cir., 1961, 290 F.2d 308; Mississippi Shipping Company, Inc. v. Henderson, 5 Cir., 1956, 231 F.2d 457; Delta Stevedoring Co. v. Henderson,

5 Cir., 1948, 168 F.2d 872; Henderson v. Pate Stevedoring Co., 5 Cir., 1943, 134 F.2d 440. *Cf.* Southern Stevedoring Co. v. Voris, 5 Cir., 1951, 190 F.2d 275, in which the findings were based on evidence that was held inadmissible.

5. 33 U.S.C.A. § 901 et seq.

6. Section 19(a), 33 U.S.C.A. § 919(a).

7. Section 21(a), 33 U.S.C.A. § 921(b).

p. 120.[8] Consequently, since "findings may be clearly erroneous without being unreasonable so as to be upset under the substantial-evidence rule, the scope of review of administrative findings is narrower than the scope of review of [the findings of a judge sitting without a jury]." Id., p. 121.[9]

◼ The scope of judicial review of administrative decisions under the Longshoremen's and Harbor Workers' Act has not changed as a result of adoption of the Administrative Procedure Act.[10] O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 1965, 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895. Inferences drawn by the deputy commissioner are to be accepted "unless they are irrational or 'unsupported by substantial evidence on the record * * * as a whole.'" Id., 380 U.S. at 362, 85 S.Ct. at 1014, 13 L.Ed.2d at 898, citing O'Leary v. Brown-Pacific-Maxon, Inc., 1951, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483.

The evidence before the deputy commissioner showed that Watson suffered an injury to his left leg on February 6, 1961. He underwent a series of operations and other procedures in an effort to avoid amputation of the leg. These were unsuccessful and the leg was amputated below the knee in 1962. He was fitted with a prosthesis and returned to work November 21, 1962. He worked regularly thereafter until August, 1965, when he was hurt in another accident. He had recovered from that injury by April 7, 1966; but in April, 1966, he developed a "small ulcer" on the head of the stump on his left leg, resulting from the pressure of the use of the prosthesis. This ulcer was excised. However, at the time of the hearing Watson was still unable to use his prosthesis, and he had to use crutches to get about.

Watson claims he suffers from cramps or aches in his right leg (from which a graft was taken in an effort to avoid amputation of his left leg). The doctors can find no functional disability in his right leg, and attribute any discomfort he may be having to the fact that he is now using crutches and putting all his weight on his right foot.

In sum, the medical evidence with respect to Watson's left leg is that it is likely that his prosthesis can be adjusted to enable him to wear it again. If not, another operation can be performed to provide an additional skin flap and thus enable him to wear the artificial limb. Problems of this nature are apt to recur but it is "reasonably and medically probable" that Watson can be rehabilitated to the extent that he will be able again fully to use his prosthesis. The doctors are unable to say with certainty when this will be accomplished.

Watson has an eighth grade education. He is approximately 46 years old. His only occupational skill is as a longshoreman. He has more than 25 years seniority in this occupation, however, and, when he was able to use his prosthesis, he managed by virtue of his seniority to get supervisory type assignments requiring a minimum of walking or other physical efforts.

◼ In determining what is permanent total disability under the Act, the degree of disability "cannot be measured by physical condition alone. Other factors must be considered, such as age, education, industrial history and the availability of work which [the injured worker] can do." Cunnyngham v. Donovan, 5 Cir., 1964, 328 F.2d 694, 697. Hence, as the court found in that case, the loss of one leg and the loss of thirty-five per cent use of the other amounts to

8. See, e. g., Consolo v. Federal Maritime Commission, 1966, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131; Peoples Bank of Trenton v. Saxon, 6 Cir., 1967, 373 F.2d 185, 189.

9. See NLRB v. Southland Mfg. Co., 4 Cir., 1952, 201 F.2d 244, 246; cf. United

States v. United States Gypsum Co., 1948, 333 U.S. 364, 394–395, 68 S.Ct. 525, 92 L.Ed. 746; District of Columbia v. Pace, 1944, 320 U.S. 698, 701–702, 64 S.Ct. 406, 88 L.Ed. 408.

10. 60 Stat. 237, as amended, 5 U.S.C.A. § 1001 et seq., now 5 U.S.C.A. § 551 et seq.

permanent and total disability within the meaning of the Act. "The concept of 'total disability' is economic as well as medical." Quick v. Martin, D.C.Cir., 1968, 397 F.2d 644.[11]

■ At the time the deputy commissioner heard this case, Watson was unable to use his artificial limb. He was able to walk only with the assistance of a crutch. Considering Watson's age, education, and skills, there was substantial evidence on the basis of which the deputy commissioner might conclude that Watson was totally disabled without requiring proof that he sought to secure or perform other kinds of work. Indeed, the employer does not suggest that Watson was able to hold another job at that time. What the employer contends is that the doctors think that Watson will sooner or later be successfully treated and that he will then be able to use his artificial leg and to return to supervisory work in the docks.

The Longshoremen's and Harbor Workers' Act does not define the term "permanent, total disability," nor have the courts set forth standards for determination of when this condition exists under the Act. However, these words have been used in many state compensation statutes. As there used, the term "permanent" has been held not to mean eternal or everlasting, but merely that the disability is lasting or continuous as distinguished from temporary, or that it will be long continued.[12]

We think that a similar interpretation of the Longshoremen's and Harbor Workers' Act is correct. That Act itself contemplates that disability "adjudged to be permanent" may cease because it provides in express terms that payments for such disability shall be made "during the continuance of such total disability." It can be urged that this phrase is limited in its application to the condition of an employee who is thought by the medical testimony to be incurable but who later nonetheless recovers. In a statute designed to benefit injured employees and intended to be read liberally in their behalf, it is an equally fair, and, we think, a better construction to find in this phrase an intention to consider an employee permanently disabled when his condition has continued for a lengthy period, and it appears to be of lasting or indefinite duration, as distinguished from one in which recovery merely awaits a normal healing period.

■ The deputy commissioner's determination that an employee is disabled need not depend upon medical testimony alone, and the deputy commissioner may reach this conclusion on the basis of lay testimony. See Todd Shipyards Corporation v. Donovan, 5 Cir., 1962, 300 F.2d 741, 742; Independent Stevedore Company v. O'Leary, 9 Cir., 1966, 357 F.2d 812, 814. Similarly, the determination that a disability is temporary rather than permanent need not be reached merely because the medical prognosis is that the employee is likely at some indefinite future date to get better and to be able to return to work. The statute neither requires that a longshoreman be bed-ridden before he is considered totally disabled nor that he be pronounced medically incurable before his condition is permanent.

11. See Eastern S.S. Lines v. Monahan, 1 Cir., 1940, 110 F.2d 840; Employers Liability Assurance Corp. v. Hughes, S.D. N.Y., 1959, 188 F.Supp. 623 (Weinfeld, J.); cf. McGaughy v. Gardner, E.D. La., 1967, 264 F.Supp. 820; Alsobrooks v. Gardner, 5 Cir., 1966, 357 F.2d 110, for analogous approach in determining disability under the Social Security Act.

12. Meznarich v. Republic Coal Co., 1935, 101 Mont. 78, 53 P.2d 82, 86; see Logsdon v. Industrial Commission, 1944, 143 Ohio St. 508, 57 N.E.2d 75, 78; Sykes v. Republic Coal Co., 1933, 94 Mont. 239, 22 P.2d 157, 160.

There are neither categorical imperatives nor hard and fast rules in the statute, and we intend to create none by this decision. The question of whether a disability is permanent is left by the Act for the deputy commissioner's determination, limited of course by the substantial evidence standard. The deputy commissioner is authorized to weigh the evidence and to draw inferences from it. "Indeed, this type of determination," as the Supreme Court observed in another connection,[13] "would seem to be one peculiarly for the Deputy Commissioner."

The determination that Watson is permanently disabled does not foreclose the possibility that his condition may change. If Watson's condition improves so that he is again able to use his prosthesis and work on the docks, or elsewhere, in some job that he is physically able to hold, his disability may have ceased to be permanent and the employer may then have his condition reviewed under the procedure set forth in 33 U.S.C.A. § 922.[14] See Godfrey v. Henderson, 5 Cir., 1955, 222 F.2d 845.

▇▇▇ We hold that there is substantial evidence to support the deputy commissioner's conclusion that Watson's disability was both permanent and total within the concept of the statute. The mere fact that a district court might reach another conclusion on the same evidence had the statute given it the authority it gives the deputy commissioner does not justify setting the deputy commissioner's determination aside. Hence, the judgment of the district court must be

Reversed.

13. O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 1965, 380 U.S. 359, 364, 85 S.Ct. 1012, 13 L.Ed.2d 895.

14. "Upon his own initiative, or upon the application of any party in interest, on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case in accordance with the procedure prescribed in respect of claims in section 919 of this title, and in accordance with such section issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation." 33 U.S.C.A. § 922.