**BATH IRON WORKS CORPORATION and Commercial Union Companies, Petitioners,**

v.

**Russell E. WHITE, and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 78–1002.

United States Court of Appeals, First Circuit.

Argued May 4, 1978.

Decided Oct. 3, 1978.

Robert F. Hanson, Portland, Me., with whom Stephen Hessert and Norman & Hanson, Portland, Me., were on brief, for petitioners.

Joshua T. Gillelan, II, Atty., U. S. Dept. of Labor, Washington, D. C., with whom Carin Ann Clauss, Sol. of Labor, and Laurie M. Streeter, Associate Sol., Washington, D. C., were on brief, for respondent Director, Office of Workers' Compensation Programs.

Patrick N. McTeague, Brunswick, Me., with whom McTeague, Higbee & Tierney, Brunswick, Me., was on brief, for claimant-respondent.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

The Benefits Review Board of the Department of Labor, affirming in part the decision of the administrative law judge, ordered Bath Iron Works Corp. and its insurance carrier, Commercial Union Insurance Co. (Bath), to pay claimant, Russell E. White, a Bath employee, permanent partial disability benefits under the Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C. §§ 901 *et seq.* (Supp. V 1975). On this petition for review, Bath seeks to have the compensation award set aside, arguing (1) that the evidence fails to support the administrative finding that White has an occupational injury, and (2) that the Board erred in concluding that White's asbestosis[1] resulted in a compensable disability. We affirm the decision of the Board.

Except for brief periods, claimant White worked for Bath as a flangecoverer and pipecoverer from 1939 to 1967. This work resulted in White's extensive exposure to asbestos dust. In July, 1966, White was tested for asbestosis, and the probable presence of that disease in his lungs was diagnosed. Claimant's union informed Bath that White should be transferred to an asbestos free environment. White was not transferred until February, 1967, at which time he was assigned to the machine shop. His duties in the machine shop, however, continued to subject him to substantial exposure to asbestos dust until sometime in September of 1974. White did not have the experience or skill to qualify for the top rated pay as a machinist and his classification was changed from that of a skilled laborer in pipecovering to that of a semi-skilled laborer in the machine shop. This transfer normally would have resulted in a nineteen percent cut in pay, but Bath continued to pay White at his prior rate as a pipecoverer. Since 1967, White had worked in the machine shop, except for a period between September, 1974, and December, 1975, when he was disabled by an occupationally unrelated vascular condition.

White filed a claim for benefits under the Act for permanent partial disability from the date of his transfer in February, 1967, to September, 1974, and for permanent total disability thereafter, alleging that he was disabled by pulmonary and vascular conditions related to his employ-

---

1. A form of lung disease (pneumoconiosis) caused by inhaling fibers of asbestos. Dorland's Medical Dictionary, 25th Ed.1974.

ment. After a hearing, the administrative law judge found that White's occupational exposure to asbestos had aggravated a preexisting pulmonary condition, and awarded compensation for a thirty percent permanent partial disability from February, 1967.[2] On review, the Board upheld the administrative law judge's finding that White suffered from an occupational disease, asbestosis. The Board concluded that, regardless of whether White's exposure to asbestos had aggravated other nonoccupational pulmonary problems, the fact that his asbestosis had resulted in his inability to continue employment as a skilled pipecoverer and had required his transfer to a semi-skilled position constituted a compensable disability of nineteen percent, reflecting the decrease in White's earning capacity which attended his transfer. Before turning to the propriety of the Board's decision, we briefly review the medical evidence upon which it is based.

White's primary physical complaints involve chest pains and shortness of breath. Medical evidence in the record indicates that White suffers from heart and vascular ailments, unrelated to asbestos exposure, which resulted in a period of hospitalization and disability in 1974–75. It also reveals that he suffers from longstanding chronic obstructive lung disease, consisting of a combination of chronic bronchitis, emphysema and healed tuberculosis. Medical experts testifying at the hearing concluded that there was no relationship between White's pulmonary condition and his vascular maladies, and further that the chronic obstructive lung disease, which was estimated to have produced a twenty to thirty percent impairment of lung functions, was

not caused by asbestosis. Most of the medical testimony focused on the question of whether White's preexisting lung condition had been aggravated by asbestosis. Dr. Lord, a pulmonary specialist, testified that he did not believe that asbestosis contributed to the diagnosed degree of lung impairment. He stated, however, that there was uncertainty in separating asbestosis from chronic obstructive lung disease as causal factors in White's shortness of breath.

In addition to the testing which White underwent in 1966, the medical testimony clearly supports the finding that White has had asbestosis since 1966. Dr. Lord so concluded and testified that it was the result of White's occupational exposure. Dr. Lord further related that White's asbestosis should have resulted in his exclusion from all work involving exposure to asbestos, because further exposure after 1966 would have been "foolhardy," involving a "great risk" of "increasing the severity of pulmonary disability."

■■■ At the outset, we note that the scope of our review of the Board's decision is narrow. Administrative findings of fact are to be accepted unless they are unsupported by substantial evidence in the record considered as a whole. *O'Keefe v. Smith Associates,* 380 U.S. 359, 363, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965); *O'Leary v. Brown-Pacific-Maxon, Inc.,* 340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed. 483 (1951); 33 U.S.C. § 921(b)(3) (Supp. V 1975). Moreover, that the facts permit diverse inferences is immaterial; if supported by the evidence, the inferences drawn by the administrative law judge are conclusive. *O'Keeffe v. Smith Associates, supra ; Presley v. Tinsley Main-*

2. In the proceedings before the administrative law judge, White claimed eighty percent permanent partial disability commencing in February, 1967, and total disability from September, 1974. The administrative law judge's rejection of these claims was upheld by the Board. However, the Board reversed the finding that White had suffered a thirty percent disability, concluding that the evidence would only support an award of nineteen percent permanent partial disability. In his brief, White seeks to challenge both the rejection of his total disability claim and the Board's reduction of his partial

disability. While it appears that both these rulings are sound, we do not reach the merits of either. White, having failed to file a cross-petition for review, is precluded now from attacking the Board's decision in an attempt to enlarge his rights thereunder. Rule 4(a), Fed.R. App.P.; *see Stockton v. Lucas,* 482 F.2d 979, 980 (Em.App.1973); *Bethlehem Shipbuilding Corp. v. Cardillo,* 102 F.2d 299, 304 (1st Cir. 1939), *cert. denied,* 307 U.S. 645, 59 S.Ct. 1042, 83 L.Ed. 1525; 9 J. Moore, Federal Practice ¶¶ 204.02[1–2], 204.11[1–3] (1975).

tenance Service, 529 F.2d 433, 436 (5th Cir. 1976). When a decision of the Board is before the court of appeals, review is limited to errors of law, including the question of whether the Board adhered to the substantial evidence standard in its review of factual findings. *Presley v. Tinsley Maintenance Service, supra*; *Potenza v. United Terminals, Inc.*, 524 F.2d 1136, 1137 (2d Cir. 1975). And even when the issue involves the "application of a broad statutory term or phrase to a specific set of facts," the Board's decision will be affirmed so long as it has a "reasonable legal basis." *Cardillo v. Liberty Mutual Ins. Co.*, 330 U.S. 469, 478–79, 67 S.Ct. 801, 91 L.Ed. 1028 (1947).

■ Finally, we also bear in mind the humanitarian nature of the Act, manifest by the statutory requirement that "it . . . be presumed, in the absence of substantial evidence to the contrary, [t]hat the claim comes within the provisions of" the Act, 33 U.S.C. § 920(a); and by the judicial policy that "all doubtful questions are to be resolved in favor of the injured employee," *Young & Co. v. Shea*, 397 F.2d 185, 188 (5th Cir. 1968), *cert. denied*, 395 U.S. 920, 89 S.Ct. 1771, 23 L.Ed.2d 237 (1969), in order to place the burden of possible error on the employer who is better able to bear it. *Swinton v. J. Frank Kelly, Inc.*, 180 U.S. App.D.C. 216, 222–26, 554 F.2d 1075, 1081–85, *cert. denied*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976); *see Wheatley v. Adler*, 132 U.S.App.D.C. 177, 182–84, 407 F.2d 307, 312–14 (1968).

In challenging the Board's compensation award, Bath does not and, in the face of this record, cannot properly dispute the sufficiency of the findings that White contracted asbestosis from his employment and that the disease rendered continuing employment involving asbestos exposure extremely hazardous. Rather, Bath raises two principal contentions. First, it argues that substantial evidence was lacking to support the administrative law judge's conclusion that asbestosis aggravated White's pre-existing pulmonary condition. Given the deference which must be afforded the administrative law judge's findings and in-

ferences, it may be doubted whether Bath could prevail on this claim. However, like the Board, we believe that this issue need not be reached because White is entitled to compensation because of his asbestosis without more.

■ To establish the right to disability benefits, an employee must show, aided in certain contexts by the statutory presumption, that he has suffered a disabling occupational injury. An injury, as defined by the Act, includes "such occupational disease . . . as arises naturally out of such employment . . . ." 33 U.S.C. § 902(2). It must further be established that the injury has produced a "disability," defined as the "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." *Id.* § 902(10). In cases of partial disability, such as this, once a disability is established, an employee is entitled to compensation based on the difference between his pre-disability average wage and his earning capacity after the onset of the disability. *Id.* § 908(c)(21). Wage earning capacity is determined from actual wages, unless they do not "fairly and reasonably represent . . . wage-earning capacity," *id.* § 908(h), in which case, capacity is determined by considering the nature of the injury, the degree of physical impairment, the employee's usual employment and any other factors which may affect earning capacity in the future. *Id.*

Applying these statutory provisions, the Board concluded that White's asbestosis constituted an occupational disease within the meaning of the Act. Bath, as noted, does not challenge that conclusion. In finding that White's asbestosis resulted in a nineteen percent permanent partial disability, the Board held that he had suffered a decrease in earning capacity because his disease prevented him from continuing the employment for which he was qualified as a skilled pipecoverer and required him to accept employment as a semi-skilled laborer. Finally, the Board concluded that, although White continues to be compensated at his

old rate, his actual wages do not fairly represent earning capacity, since he no longer has the physical capacity to earn the wage of a skilled pipecoverer in the open market.

■■ Although pointing out that White has not suffered an actual decrease in wages, Bath does not contest the proposition that an award for permanent partial disability may be appropriate, even though an employee has experienced no actual loss of wages due to his injury. It recognizes that the test is diminishment of wage earning capacity, not out-of-pocket loss. *See, e. g. Travelers Ins. Co. v. McLellan,* 288 F.2d 250, 252 (2d Cir. 1961); *Torres v. Hamburg-Amerika Linie,* 353 F.Supp. 1276, 1281 (D.P. R.1972). Moreover, the purpose of the Act is not limited to compensating employees for economic loss; in addition, its compensation system is designed to motivate employers to provide "the fullest measure of on-the-job safety" for their employees. H.R.Rep.No.92–1441, 92d Cong., 2d Sess., 3 U.S.Code Cong. & Admin.News, p. 4699 (1972); S.Rep.No.92–1125, 92d Cong., 2d Sess. at 2 (1972).

■ Bath's attack on the Board's decision focuses rather on the conclusion that White's asbestosis caused a disability within the meaning of the Act. Bath first claims that the medical evidence failed to establish that asbestosis had contributed to White's twenty percent lung impairment or his physical symptoms of shortness of breath and chest pains. But even if this were so, it is plain that White's asbestosis created a grave risk of additional, severe pulmonary difficulties should he continue his accustomed employment involving asbestos exposure. For there to be a disability within the meaning of section 902(10), *supra,* an employee need not be in pain, nor is he required, after injury, to continue in employment which is medically contraindicated until his condition and pain render it impossible for him to work at all. "The law does not require, as a prerequisite to recovering compensation for partial disability due to a compensable occupational disease, that the ill employee continue to work, until he be-

comes physically unable to do so." *Globe Union, Inc. v. Baker,* 310 A.2d 883, 888 (Del.Super.1973), *aff'd,* 317 A.2d 26 (1974).

■ That observation also disposes of Bath's reliance upon the fact that White continues to perform some physically strenuous tasks as a laborer in the machine shop. White need not be totally disabled to have a compensable partial disability. Disability, under the Act, is an economic concept based upon a medical foundation. *Perini Corp. v. Heyde,* 306 F.Supp. 1321, 1325 (D.R.I.1969). It includes an occupational disease which diminishes earning capacity. As a result of White's asbestosis, he has been required to accept a transfer to a lower-rated position. Only Bath's charitable treatment kept him at his former wage scale. Should White lose his job at Bath, his earning ability on the open market is subject to serious question since the higher paid employment for which he is otherwise qualified is ruled out by his illness.

■ Bath's next claim that White's asbestosis has not resulted in any restrictions upon his activities is simply not true. It was informed in 1966 that White should not be allowed to continue working as a pipecoverer, the position for which he possessed a skilled classification, because of the heavy asbestos exposure which attends such work. To argue that no restrictions were placed on White, ignores the fact that medical advice counseled that White should work only in an asbestos free environment. That Bath failed to provide White with such an environment for several years after the advice was given may suggest a callousness on Bath's part; it hardly negates the existence of restrictions on White's working activities due to his asbestosis.

■ Finally, Bath asserts that White's transfer from pipecovering to the machine shop "was not indicative of a disability . . but rather was prophylactic only and unrelated to any existing physical disability." This argument is unsound for two reasons. First, that White was transferred to prevent him from suffering even greater harm from asbestos is not inconsistent with the

fact that he had already suffered partial disability therefrom. In fact, what the transfer and the medical evidence of record do indicate is that White was no longer fit for such work because of his disease. Second, this assertion begs the question of whether White's "existing" asbestotic condition constituted a disability. The diagnosis in July of 1966 of probable asbestosis determined medically that White had an occupational disease. There was a time bomb implanted in his lungs, the power of which to disable and destroy became stronger with increased exposure to asbestos dust. To argue that there must be outward physical symptoms before a finding of permanent partial disability flies in the face of common sense as well as the medical evidence.

■ The Board's conclusion that White's disease did, in fact, result in an impairment of earning capacity and thus a compensable disability is supported by substantial medical and factual evidence and has a reasonable legal basis.

*The decision of the Board must be affirmed.*