AIR AMERICA, INC., Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, United
States Department of Labor, and Joseph
F. Kerch, Respondents.

No. 78–1318.

United States Court of Appeals,
First Circuit.

Argued Dec. 4, 1978.

Decided May 2, 1979.

774

Jeremy G. Zimmermann, New Haven, Conn., with whom Marshall B. Babson, and Wiggin & Dana, New Haven, Conn., were on brief, for petitioner.

Matthew Shafner, Groton, Conn., with whom Stephen C. Embry, and O'Brien, Shafner, Bartinik, Stuart & Kelly, Groton, Conn., were on brief, for respondent/claimant.

Mary A. Sheehan, Atty., U. S. Dept. of Labor, Washington, D. C., with whom Carin Ann Clauss, Sol. of Labor, and Laurie M. Streeter, Associate Sol., Washington, D. C., were on brief, for respondent, Director, Office of Workers' Compensation Programs.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This case involves a claim for compensation and benefits under the Longshoremen's and Harbor Workers' Act as amended, 33 U.S.C. §§ 901–50 (the Act), as extended by the Defense Base Act, 42 U.S.C. §§ 1651–54. Claimant's former employer, Air America, Inc., petitions for review of a decision of the Benefits Review Board in which claimant was found to be totally disabled.

Claimant became a pilot for Air Asia, Inc., predecessor of Air America, Inc., in Southeast Asia in 1965, after having retired from the Air Force. In early 1974, while on assignment for Air America, he contracted what was later diagnosed as "tropical sprue," a disease indigenous to the area in which he was flying. His initial symptoms included nausea, diarrhea, and body aches, and he soon developed other symptoms including numbness in his arms, legs, and feet, and muscle spasms. Claimant was on sick leave for two periods, January 7–11 and January 29–February 11, 1974, specifically due to "peripheral neuritis with muscle spasm." He resumed his flying duties on February 12, on which day he also passed his semi-annual flight physical.

Claimant continued to fly for Air America through May 31, 1974, although during this period he received frequent medical attention and his symptoms persisted. His symptoms during this period included numbness in his legs, feet, and hands, lack of control in his feet, weakness and sluggish reflexes in his lower limbs, and lack of coordination. The airplane claimant operated had some foot controls, but during his last few months he served as co-pilot, with the pilot doing most of the flying. At no time, despite repeated consultation with Air America physicians, was claimant restricted in his flying duties because of medical disability, although his flying time apparently was reduced to accommodate his frequent medical appointments.

Claimant left Air America on June 2, 1974, in part because of his desire not to be stationed in Saigon and in part because of his desire to obtain medical treatment in the United States. Claimant was 53 years old at the time.

After returning to the United States, claimant's symptoms persisted, and he continued to seek medical diagnosis and treatment. His illness was diagnosed as tropical sprue in October 1975. That disease entails a malabsorption of food and consequent nutritional deficiencies, which can cause symptoms such as claimant's. While claimant received treatment, he experienced continuing symptoms including numbness and dragging of feet, although there was some improvement. One physician stated that, as of late 1976 and early 1977, claimant had "no loss of ability to orient himself or sense position," which sometimes results from tropical sprue, but did have "a loss in sensation to differentiate clearly pin prick and bluntness." The doctor stated further, "[t]here is no way of definitely telling how far improvement will go with continued B-12 therapy, but some improvement can be expected."

The ALJ found with regard to claimant's symptoms the following:

"At the time of the hearing the claimant's symptoms were: a tendency to drag his feet, his ankles sometimes turned, numbness in his feet, especially his toes, sometimes worse than others, cramps in the calves of his legs, especially the right leg, ringing in his ears, easy bruising on the backs of his hands and splinter hemorrhages that came and went. When he had the splinter hemorrhages he could still use his hands and feet but the areas under the nails became tender and numb. The ringing in his ears came and went and did not seem to cause him any difficulty. The cramps in the calves of his legs were less frequent and his fatigue factor had improved considerably with the tetracycline and folic acid. He had a hearing loss, as do most pilots. His diarrhea and gas problems have diminished and largely disappeared. No doctor has told the claimant that there is no more that can be done for·him and no doctor has told him that his condition is permanent."

Claimant claimed a temporary total disability from January 7–11, 1974 and a permanent total disability at all times after January 29, 1974. The ALJ found instead that he was totally disabled only during the two brief periods in early 1974 when he took sick leave, and that after February 19, 1974 he had a temporary partial disability:

"I find the claimant's wage earning capacity has diminished by approximately 35 percent following the illness and the periods of temporary total disability. With some numbness in his hands and feet the claimant would have difficulty maneuvering the controls of an aircraft. If he were to seek work elsewhere on the open market as a pilot his disability would probably become obvious and adversely affect his capability to find and perform such work. The claimant still had some of these residuals from the illness at the time of the hearing and improvement was expected to be gradual. Thus, I conclude that the claimant's temporary partial disability existed from February 19, 1974 to the present and continuing, but for a period not to exceed five years, because the Act limits temporary partial disability to a maximum of five years. Section 8(e) of the Act."

The ALJ did not explain how he arrived at the 35% figure.

The Benefits Review Board, upon cross-petitions for review, affirmed the ALJ's finding of temporary total disability during the January 7–11 and January 29–February 11 periods, and agreed with the ALJ's temporary 35% partial disability finding up to June 2, 1974. The Review Board reversed the ALJ's finding of temporary partial disability subsequent to that date and instead found claimant to have a permanent total disability thereafter. The Board did not dispute the ALJ's findings as to the nature of the symptoms. The basis for the Board's conclusion that the disability was total was that the symptoms found by the ALJ made him totally disabled from employment as a pilot, and that the Company failed to show the availability of suitable alternate employment. The Board determined claimant's disability to be permanent because of the absence of any medical prognosis of eventual recovery.

The Company challenges the Board's order on the ground that the evidence does not support a finding of any disability. In passing on this and related questions, we must take into account the two-level administrative process which carves out for an ALJ a stronger role than is often true in administrative proceedings. Under the Act, findings of fact of an ALJ are not open for de novo consideration by the Benefits Review Board. Rather, the Board reviews the ALJ's findings only to see if they are "supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3); 20 C.F.R. § 802.301; *Offshore Food Service, Inc. v. Murillo,* 1 Benefits Review Bd. Serv. (MB) 9, 10 (1974), *aff'd,* 524 F.2d 967 (5th Cir. 1975). The Review Board's order is then appealable to a court of appeals, 33 U.S.C. § 921(c), which exercises the same limited standard of review.

We recently outlined the principles governing our review function as follows:

"At the outset, we note that the scope of our review of the Board's decision is narrow. Administrative findings of fact are to be accepted unless they are unsupported by substantial evidence in the record considered as a whole. *O'Keeffe v. Smith Associates,* 380 U.S. 359, 363, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965); *O'Leary v. Brown-Pacific-Maxon, Inc.,* 340 U.S. 504, 508, 71 S.Ct. 470, 95 L.Ed. 483 (1951); 33 U.S.C. § 921(b)(3) (Supp. V 1975). Moreover, that the facts permit diverse inferences is immaterial; if supported by the evidence, the inferences drawn by the administrative law judge are conclusive. *O'Keeffe v. Smith Associates, supra; Presley v. Tinsley Maintenance Service,* 529 F.2d 433, 436 (5th Cir. 1976). When a decision of the Board is before the court of appeals, review is limited to errors of law, including the question of whether the Board adhered to the substantial evidence standard in its review of factual findings. *Presley v. Tinsley Maintenance Service, supra; Potenza v. United Terminals, Inc.,* 524 F.2d

1136, 1137 (2d Cir. 1975). And even when the issue involves the 'application of a broad statutory term or phrase to a specific set of facts,' the Board's decision will be affirmed so long as it has a 'reasonable legal basis.' *Cardillo v. Liberty Mutual Ins. Co.,* 330 U.S. 469, 478–79, 67 S.Ct. 801, 91 L.Ed. 1028 (1947).

"Finally, we also bear in mind the humanitarian nature of the Act, manifest by the statutory requirement that 'it . . . be presumed, in the absence of substantial evidence to the contrary, [t]hat the claim comes within the provisions of' the Act, 33 U.S.C. § 920(a); and by the judicial policy that 'all doubtful questions are to be resolved in favor of the injured employee,' *Young & Co. v. Shea,* 397 F.2d 185, 188 (5th Cir. 1968), *cert. denied,* 395 U.S. 920, 89 S.Ct. 1771, 23 L.Ed.2d 237 (1969), in order to place the burden of possible error on the employer who is better able to bear it. *Swinton v. J. Frank Kelly, Inc.,* 180 U.S. App.D.C. 216, 222–26, 554 F.2d 1075, 1081–85, *cert. denied,* 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976); *see Wheatley v. Adler,* 132 U.S.App.D.C. 177, 182–84, 407 F.2d 307, 312–14 (1968)."

*Bath Iron Works Corp. v. White,* 584 F.2d 569, 573–74 (1st Cir. 1978). On questions of law rather than fact, the degree of deference, if any, we are to afford the Review Board's view depends upon the precise sort of question involved. *Stockman v. John T. Clark & Son,* 539 F.2d 264, 269–70 (1st Cir. 1976), *cert. denied,* 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1092 (1977).

There were three substantive questions in the present case: (1) Was claimant disabled?; (2) What was the degree of disability, total or partial?; and (3) What is the duration of the disability?

## I.

■ We reject the Company's contention that the record lacks substantial evidence supportive of a finding of *some* degree of disability. The Act defines "disability" as "incapacity because of injury to earn the wages which the employee was receiv-ing at the time of injury in the same or any other employment." 33 U.S.C. § 902(10). Disability is thus "an economic concept based upon a medical foundation." *Bath Iron Works Corp. v. White,* 584 F.2d at 575. There was ample evidence in the record to support the conclusion that claimant was disabled from flying. A person with persistent numbness and lack of control over his legs and feet seems manifestly unqualified to pilot an airplane. While there is evidence tending to show that claimant could earn wages in other employment, the record does not establish that the amount he could earn in alternate employment would match his earnings as a pilot. It therefore was well within the ALJ's and the Review Board's discretion to find claimant to be disabled.

■ This being so, we affirm the ALJ's finding, which the Review Board found to be supported by substantial evidence, that claimant was totally disabled during the two periods he took sick leave in early 1974 and was partially disabled from February 19 to June 2, 1974. That claimant in fact continued to work as a pilot during the latter period is not inconsistent with a partial disability award based on diminished wage-earning capacity. *Travelers Insurance Co. v. McLellan,* 288 F.2d 250 (2d Cir. 1961); *Twin Harbor Stevedoring & Tug Co. v. Marshall,* 103 F.2d 513 (9th Cir. 1939); *Luckenbach S.S. Co. v. Norton,* 96 F.2d 764 (3d Cir. 1938). The ALJ's determination that the degree of disability was 35% during this period, which the Review Board affirmed, seems adequately supported as well.

## II.

■ The Review Board's finding that claimant was totally disabled after June 2, 1974 presents a more difficult issue. In reaching that determination, the Review Board reversed the ALJ's express finding that claimant's disability was not total, but only partial. Our inquiry therefore is not merely whether there is substantial evidence supporting the Board's total disability determination. Rather, as an initial matter the Board's conclusion can stand only if

there was not substantial evidence supporting the ALJ's finding that the disability was only partial. If the ALJ's finding in this regard was founded on substantial evidence in the record considered as a whole, the Review Board was bound to accept it. 33 U.S.C. § 921(b)(3). It is within our authority, in reviewing the Review Board's decision for legal error, to reverse the Board if it erred in evaluating the evidence underlying the ALJ's finding not to constitute substantial evidence. *Bath Iron Works Corp. v. White*, 584 F.2d at 574.

■ This court in *Eastern S.S. Lines, Inc. v. Monahan*, 110 F.2d 840, 842 (1st Cir. 1940), explained principles regarding degree of disability that remain valid today:

"Total disability would seem to exist when there is a complete incapacity to earn wages in the same or any other employment. The use of the words 'in the same or any other employment' presupposes a situation where a man can secure employment. . . . The degree of disability in any case cannot be measured by physical condition alone, but there must be taken into consideration the injured man's age, his industrial history, his mentality, his education, and the availability of that type of work which he can do."

*Accord, American Mutual Insurance Co. v. Jones,* 138 U.S.App.D.C. 269, 271–72, 426 F.2d 1263, 1265–66 (1970); *Watson v. Gulf Stevedore Corp.,* 400 F.2d 649, 653 (5th Cir. 1968), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1471, 22 L.Ed.2d 755 (1969); *Brown v. Marine Terminals, Inc.,* 1 Benefits Review Bd. Serv. (MB) 212 (1974). In this case, the primary evidence of disability was claimant's medical symptoms, outlined above. Despite those symptoms, the ALJ found that there are "jobs [other than being a pilot] he can do, such as desk jobs that he has done in the past, at which he can earn wages." This finding was, in large part, the ALJ's reason for making an ultimate finding of partial, not total, disability.

We believe there was substantial evidence in the record to support the ALJ's view. Claimant admitted at the hearing before the ALJ that he is capable of handling a desk job, but that he had made no attempts to find one. He in fact has applied for no job since leaving Air America. Claimant had two years of college education, and his resume, which the Company introduced into evidence, indicates his qualification for a variety of desk positions, particularly brokerage or personnel work in which he has had experience. Indeed, claimant testified that at some time after January 6, 1974 he had been offered a job in the brokerage business which he refused. Further, the Company's assistant vice-president testified, albeit somewhat vaguely, that desk jobs in the aviation field had been available as of June 1974 for persons with claimant's qualifications, and estimated that such a job would have paid "a salary of fifteen hundred or sixteen hundred a month, at the very least." Claimant's medical problems do not appear to be of a type that would preclude such desk work, as his own statement that he was capable of performing desk work indicates. It is true that claimant was hospitalized several times and had a significant number of medical appointments relating to his illness which any employment would have to accommodate. But the frequency of medical appointments (apparently averaging about one every five days from January 6 to June 2, 1974, and about one per week from May 1975 through December 1976) and the aggregate duration of the hospitalizations (30 days in 1975 and 15 days in 1976) are not inconsistent with claimant working. The ALJ was not required to accept claimant's testimony that he turned down the brokerage job because he had too many medical appointments to attend. While different inferences might be drawn from these facts, the inference of just partial disability drawn by the ALJ is supported by the evidence and thus is conclusive.

The Review Board based its contrary conclusion on the proposition that once a claimant proves himself incapable of performing his prior employment, the employer can defeat the total disability claim only by a specific showing that suitable alternative

jobs are presently available. The Review Board cites several cases for this proposition. *Haughton Elevator Co. v. Lewis,* 572 F.2d 447, 451 (4th Cir. 1978); *American Stevedores, Inc. v. Salzano,* 538 F.2d 933 (2d Cir. 1976); *Diamond M. Drilling Co. v. Marshall,* 577 F.2d 1003 (5th Cir. 1978); *Perini Corp. v. Heyde,* 306 F.Supp. 1321 (D.R.I. 1969).[1] The Review Board reasoned that since claimant proved his inability to work as a pilot, and the Company did not meet its purported burden to show another job actually available to claimant which he could perform, the total disability claim should prevail.

The showing that the Board would require the Company to make is too stringent a burden in the circumstances present here. While some of the cited cases state the burden in broad terms, they must be read in light of their facts. So read, they do not support a mechanical rule, applicable in any and all circumstances, that the employer must always demonstrate the availability of an actual job opportunity whenever a claimant shows an inability to perform his previous work. Rather it is reasonable to require the employer to make such a strong showing when a claimant's inability to perform any available work seems probable, in light of claimant's physical condition and other circumstances—such as claimant's age, education, and work experience. The strength of the presumption of total disability, and hence the severity of the burden the employer must bear to overcome it, should reflect the reality of the situation. Where claimant's medical impairment affects only a specialized skill that is necessary in his former employment, his resulting inability to perform that work does not necessarily indicate an inability to perform other work, not requiring that skill, for which his education and work experience qualify him. In such a situation, it makes

little sense to require the ALJ to find total disability unless the employer demonstrates a specific job opportunity available to claimant. *See generally* 2 A. Larson, Workmen's Compensation § 57.61, at 10–133 to –144 (1976).

In each case the Review Board cites, the claimant's physical impairment, education, and work experience were such as to render him theoretically capable of performing "only a special and very limited class of work," *Perini Corp. v. Heyde,* 306 F.Supp. at 1326, *quoting Eastern S.S. Lines v. Monahan,* 21 F.Supp. 535, 537 (D.Me.1937). In *American Stevedores, Inc. v. Salzano,* 538 F.2d 933, claimant had suffered a myocardial infarction which left him capable of performing only "light or sedentary work." He was unable to handle his previous job as a marine carpenter, which had been his sole industrial experience, and he had only a tenth grade education. In *Perini Corp. v. Heyde,* 306 F.Supp. 1321, claimant was a laborer whose serious back injury incapacitated him from his usual work and left him able to perform only "light work." *Haughton Elevator Co. v. Lewis,* 572 F.2d 447, involved a claimant whose severe hernia condition disabled him from his former work as an elevator constructor and mechanic, which he had done for sixteen years. There was medical evidence that his condition would not preclude his doing "light work not including lifting of heavy objects, prolonged walking, climbing or standing," *id.* at 450, but claimant—despite repeated efforts—was unable to find suitable work. Claimant was 52 years old and had a seventh grade education. Lastly, in *Diamond M. Drilling Co. v. Marshall,* 577 F.2d 1003, claimant had suffered a massive heart attack as a result of which he continued to experience chest pains and become fatigued upon the slightest exertion. This totally disabled him from his prior work on oil rigs,

---

1. The Review Board also cites *Director, OWCP v. Raber-Kief, Inc.,* 558 F.2d 1037 (9th Cir. 1977), *rev'g mem. Schenk v. Raber-Kief, Inc.,* 1 Benefits Review Bd. Serv. (MB) 389 (1975). The Review Board in that case reversed the ALJ's finding of permanent total disability on the substantial evidence standard, and neither the majority nor dissenting opinions discussed burden of proof or availability of alternative employment opportunities. The Ninth Circuit's opinion reversing the Review Board is unpublished, so we do not see how it can support the proposition for which the Board cites it.

which comprised his entire work experience. Claimant had only a seventh grade education. In each of these cases, the claimant's medical impairment and job qualifications were such that his suitable job prospects would be expected to be very limited, if existent at all. It has been in this situation that the courts have required proof of actual employment opportunities to defeat a total disability claim.

The case before us is not of this genre. The medical evidence suggests disability only as to work requiring a high degree of coordination and dexterity as well as quick reflexes, and perhaps as to work that could not accommodate fairly frequent medical appointments. While claimant's former work as an airplane pilot is inconsistent with his physical condition, many, perhaps most, jobs would not be. Claimant testified he could handle a desk job. Moreover, claimant's college education and extensive work experience, including brokerage experience and much administrative experience while serving as an Air Force officer, show him to be well qualified to do a wide variety of work. He has administrative, supervisory, and technical skills that would appear to lend themselves well to desk or white collar work, which would not have physical requirements claimant could not satisfy. There is evidence that he was actually offered a brokerage position. Claimant's age, 53 when he left Air America, may not be the ideal age to enter the private labor market, but claimant has made no effort to obtain suitable employment, not even part-time work which could accommodate his medical treatment schedule. Under the circumstances—given a college-trained claimant with this broad range of skills and experience—we are unable to uphold the Board's conclusion that because the Company did not prove the existence of an actual suitable job presently available to claimant, the record lacked substantial evidence from which to find that claimant was able to earn wages in some employment.

We have assumed, based upon our reading of the Review Board's decision and order, that the Board required the Company to show specific job opportunities presently available because of the court decisions discussed above. We do not believe the Review Board formulated or intended to impose that requirement as a procedural rule itself. Even if that were the case, however, our view as to its impropriety in this situation would remain. Congress has expressly designated the ALJ as the fact finder in compensation procedures under the Act, restricting the Board's powers of review to a substantial evidence standard. 33 U.S.C. §§ 919(d), 921(b)(3). The Review Board cannot ignore the limited nature of its role and usurp the ALJ's statutory fact-finding role by unduly restricting his discretion to make findings, supported by substantial evidence in the record, based upon his reasoned view of the evidence. The scope of the Review Board's authority is not as broad as that, for example, of the National Labor Relations Board. Under the National Labor Relations Act an ALJ who acts as fact finder in an unfair labor practice case does so as an agent of the Board, not by any statutory authority of his own. 29 U.S.C. § 161. The Benefits Review Board "is less a policy-making and more an 'umpiring' body than is true of agencies such as the National Labor Relations Board." *Stockman v. John T. Clark & Son,* 539 F.2d at 269; *Pittson Stevedoring Corp. v. Dellaventura,* 544 F.2d 35, 49 (2d Cir. 1976), aff'd sub nom. *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977).

The Review Board seeks to support the burden it would place on the Company with cases involving disability claims under the Social Security Act. Such support is not forthcoming. In a Social Security disability case, the burden on the Secretary to show alternative job opportunities does not arise until " 'the claimant has made a showing of inability to return to his former work, and the record does not otherwise contain any evidence of claimant's ability to engage in substantial gainful work.' " *Hernandez v. Weinberger,* 493 F.2d 1120, 1122–23 (1st Cir. 1974), *quoting Meneses v. Secretary of HEW,* 143 U.S.App.D.C. 81, 84, 442 F.2d 803, 806 (1971). In the present case, the

record does indeed contain evidence of claimant's ability to engage in substantial gainful work. Furthermore, we have recognized in Social Security cases that the availability of jobs that someone of claimant's age, education, and experience could do may sometimes be so obvious that the agency can take administrative notice of the fact. *See Hernandez v. Weinberger,* 493 F.2d at 1123; *Breaux v. Finch,* 421 F.2d 687, 689–90 (5th Cir. 1970). In so saying, we do not overlook the remedial nature of the legislation in issue, nor suggest that in many, perhaps most, cases it is not proper to place a substantial burden to show alternative employment opportunities upon an employer. But any such rule must be applied reasonably and with proper regard for all the facts of the case.

We accordingly conclude that the finding of the Review Board that claimant was totally disabled after June 2, 1974 must be reversed. Because of its total disability holding, the Review Board has no occasion to pass on the ALJ's determination that the degree of disability was 35% after June 2, 1974. It should have that opportunity now. If there is insufficient evidence of the degree of disability to support the ALJ's finding, the Board may remand to the ALJ for further findings on the same issue.[2]

### III.

We consider finally whether claimant's disability was permanent or temporary. The ALJ found the disability not to be permanent, because "no doctor had told [claimant] that there was no more that could be done for him and no doctor had told him that his condition was permanent," and because his condition seemed to be improving. Benefits pursuant to the ALJ's award of temporary partial disability would have to cease after a period of not more than five years. 33 U.S.C. § 903(e). The Review Board reversed the ALJ's finding of temporariness, explaining as follows:

" 'The determination that a disability is temporary rather than permanent need not be reached merely because the medical prognosis is that the employee is likely at some indefinite future date to get better and return to work.' *Watson v. Gulf Stevedore Corp.,* [400 F.2d 649, 5th Cir.,]. Here, there is no medical prognosis of eventual recovery at any future date. The Board concludes that it is therefore appropriate to find the claimant permanently as well as totally disabled. Should claimant's condition hereafter improve, either party can apply under Section 22 of the Act, 33 U.S.C. § 922, for an appropriate modification of the award."

The Review Board's explanation is not entirely satisfactory. To support its finding of permanency, it was not enough for the Review Board to conclude the ALJ's finding of temporariness was not required. In addition, the Review Board had to conclude, justifiably, that the ALJ's finding was unsupported by substantial evidence on the record. The quotation from *Watson* supports the first proposition only.

While the Review Board's explanation may be lacking, we nevertheless feel that its conclusion of permanency was correct. To be considered permanent, a disability need not be "eternal or everlasting;" it is sufficient that the "condition has continued for a lengthy period, and it appears to be of lasting or indefinite duration, as distinguished from one in which recovery merely awaits a normal healing period." *Watson v. Gulf Stevedoring Corp.,* 400 F.2d at 654. At the time of the hearing before the ALJ, claimant's symptoms had persisted for over three years. The medical evidence, while indicating that some improvement had occurred and probably would continue, did not indicate that recovery was expected. Certainly there was no prediction that claimant would be sufficiently cured to resume flying. Especially in light of the poli-

---

**2.** 33 U.S.C. § 921(b)(4). The Act does not spell out our own remand authority, 33 U.S.C. § 921(c), but we presume it to be within our appellate jurisdiction. *See Duluth, Missabe &* *Iron Range Ry. v. United States Dep't of Labor,* 553 F.2d 1144, 1152 (8th Cir. 1977); *American Stevedores, Inc. v. Salzano,* 538 F.2d 933, 937 (2d Cir. 1976).

cy that doubtful questions be resolved in claimant's favor, *Bath Iron Works Corp. v. White,* 584 F.2d at 574, the ALJ's view that "it seems likely that the claimant may eventually be cured or . . . that his wage earning capacity may be fully or mostly restored" does not support his finding of temporariness. The Review Board properly overrode the ALJ's determination in this regard and found claimant's disability to be permanent.

We accordingly affirm the award of temporary total disability for January 7–11 and January 29–February 11, 1974 and temporary 35% partial disability from February 19 to June 2, 1974. We set aside the award of permanent total disability thereafter, and remand to the Benefits Review Board for issuance of an award of permanent partial disability—the precise degree of disability to be determined by the Board.

*So ordered.*