ARGONAUT INSURANCE COMPANY,
Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, United
States Department of Labor, and Robert
D. Cook, Respondents.

No. 80–1570.

United States Court of Appeals,
First Circuit.

Argued Feb. 12, 1981.
Decided April 24, 1981.

Timothy F. Nevils, Boston, Mass., with whom Sullivan & Cronin, Boston, Mass., was on brief, for petitioner.

Lillian Cohen Levine, Wakefield, Mass., with whom Law Offices of Bernard Cohen, Inc., Brockton, Mass., was on brief, for respondent Robert D. Cook.

Catherine A. Giacona, Atty., U. S. Dept. of Labor, Washington, D. C., with whom Carin Ann Clauss, Sol. of Labor, Laurie M. Streeter, Associate Sol. and Marianne Demetral Smith, Atty., U. S. Dept. of Labor, Washington, D. C., were on brief, for respondent Director, Office of Workers' Compensation Programs.

Before COFFIN, Chief Judge, ALDRICH, Circuit Judge, WYZANSKI,* District Judge.

ALDRICH, Senior Circuit Judge.

This is a petition by an insurer to review a decision of the Benefits Review Board affirming, pro forma, the findings of an administrative law judge that Cook, the claimant, a longshoreman, is totally and permanently disabled as the result of a severe injury to his right elbow in 1971, requiring a prosthesis. We approach such questions with the realization that a heavy burden is on the insurer to show that, viewed on the record as a whole, the decision in favor of the claimant is unsupported. *Air America, Inc. v. Director OWCP*, 1 Cir., 1979, 597 F.2d 773 ("substantial evidence").

We are slow to reverse. However, this case presents serious problems. Concededly, claimant can no longer do manual work. On the other hand, until he developed a voice difficulty, he took an accelerated program at Boston University School of Education, and passed all his courses. He is obviously a man of intelligence. The alleged obstacle to remunerative employment is the fact that the prosthesis slips out unexpectedly, causing sharp pain, requiring Percodan, which pain lasts for a period of time. On behalf of the insurer a well qualified specialist testified to an extensive number of jobs that were available and that claimant could hold, in spite of his difficulties. The ALJ responded that because of the

---

* Sitting by designation.

pulling loose of the elbow, "which occurs frequently," no one would employ him. The finding of frequency was bolstered by a finding that claimant "had to miss classes and to postpone the taking of examinations because of his pain and inability to use his right hand."

Claimant on direct examination said nothing about how often his elbow pulls loose. He testified that he took a year round course for two and a half years, "which is about as full-time a student as you can get."

Admittedly, this testimony was amplified on cross. He had pain "not all the time, a lot of the times," and he "couldn't take all the exams because I couldn't write for a lengthy period of time." Nevertheless, he passed all his courses, uses a typewriter, and drives a car with both hands. He has never made an attempt to find work.

The trial took place in November, 1978. Claimant's attending physician over the years was a Dr. Sledge. His reports, and those of another doctor chosen by claimant, and of claimant's history given the insurer's physician, were introduced as exhibits. ....¹

■ The ALJ's finding of "frequency" of elbow dislocations is open to very serious doubts, the more especially in light of claimant's counsel—whom the ALJ, in making a fee award, must have regarded as highly experienced—having failed to ask a single question on the subject. If it were frequent, it is hard to think that counsel would not have saturated the record. We take this omission together with the medical reports, none of which read in terms of frequency. Particularly conspicuous is Dr. Sledge, who had followed claimant's entire course, and who checked him every three months. Not only does he not note frequency, but he was prepared, when necessary, to try a new prosthesis. On the record as a whole, we do not believe frequency to be substantially supported.

The next step is whether such occasions as there were were sufficient to make claimant unemployable. We respect the ALJ's right to draw inferences, but we have no reason to suppose that he had expert qualifications permitting him to make findings from off the record. There was no contradiction of the insurer's expert, either by medical witnesses, or by employment counselors, or even by isolated instances of claimant being refused jobs, or losing them. This is a young man. Concededly he has had a very unfortunate time, but we believe the finding that after seven years he is still totally disabled is not substantially supported. It is difficult to see what else an insurer could be expected to do. *Cf. Air America, Inc. v. Director*, 597 F.2d ante, at 779. The order must be set aside.

■ Claimant asserted, very possibly correctly, that the evidence would at least warrant a finding of partial disability, and requested that, if we set aside the finding of total disability, the case be remanded for consideration of partial disability. To this petitioner responds that 33 U.S.C. § 914(m) had a $24,000 limitation, except for total disability, and that payments in excess of this amount have already been made. Claimant replies that subsection (m) was repealed subsequent to his injury, P.L. No. 92–576, § 5(e), 86 Stat. 1254 (1972), (although with no statement as to retrospectivity) and that although the Board has held the repeal not retrospective, two courts have since held otherwise: *Hastings v. Earth Satellite Corp.*, D.C.Cir., 1980, 628 F.2d 85, *cert. denied*, —— U.S. ——, 101 S.Ct. 281, 66 L.Ed.2d 137 (1980); *Avondale Shipyards, Inc. v. Vinson*, 5 Cir., 1980, 623 F.2d 1117.

In holding the repeal prospective only, the Board contrasted this section with 33 U.S.C. § 910, wherein Congress provided explicitly for retrospectivity, and for a special fund to cover the increased exposure. 33 U.S.C. § 944; *Hayes v. Independent Stevedoring Co.*, 1 B.R.B.S. 264 (1975).

1. For purposes of publication we omit the detail of these reports, which was the only medical evidence introduced at the trial, and none of which, in our opinion supports a finding of total disability except as to manual labor.

However much there may be said for that position, and the unfairness of charging carriers with obligations they had not anticipated when they calculated their premium and cannot recoup, *see Hastings*, ante, 628 F.2d at 93 n.22, it is now too late to raise that point. Too many courts have found this repealer, and the provisions of the similar sections 908(d)(3) and 909, retrospectively intended. *See Hastings*, ante; *Avondale Shipyards*, ante; *Puig v. Standard Dredging Corp.*, 1 Cir., 1979, 599 F.2d 467 (§ 909).[2]

The case is remanded for consideration of partial disability. On the other hand, plaintiff has had one trial on the matter of total disability and this is not to be reopened.

**2.** Further cases on retrospective application of sections 908(d)(3) and 909, and arguments pro and con, are collected in a Note, Insurers' Liability for Expanded Coverage Under the Longshoremen's and Harbor Workers' Compensation Act, 66 Virginia L.Rev. 827 (1980). As the Note points out, the special fund covers some expansions in liability and not others. We must take this as a legislative oversight, not contradicting the statute's found intent. We may also join in hoping that Congress, in its consideration of further amendments to the Act, will remove some of its present anomalies. *See* 66 Virginia L.Rev. at 842 & n.99.