**Sir Gean AMOS, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS;** Sea–Land Services, Inc.; Crawford & Company, Respondents.

No. 96–70988.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 1998.

Decided Sept. 1, 1998.

James K. Woods, Woods and Stauffer, Dallesport, Washington, for petitioner.

Russell A. Metz and Robert J. Burke, Metz & Associates, Seattle, Washington, for respondents.

Before: HUG, Chief Judge, REINHARDT and SILVERMAN, Circuit Judges.

SILVERMAN, Circuit Judge.

Sir Gean Amos injured his shoulder while working as a loader/checker for Sea–Land Service and sought treatment and benefits under the Longshore and Harbor Workers' Compensation Act. His treating orthopedic surgeon recommended surgery. Two other orthopedic surgeons recommended against it. Both recommendations were reasonable. We hold today that when an injured employee is faced with competing medical opinions about the best way to treat his work-related injury, each of them medically reasonable, it is for the patient-not the employer or the ALJ-to decide what is best for him. Since substantial evidence established the reasonableness of the surgical option, the ALJ's denial of Amos's request for the surgery was erroneous. We grant the petition and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Amos was injured on July 25, 1990 when a steel bar he was using to secure a load struck him in his face, causing him to fall across a railroad tie and injure his shoulders, back, and neck. He returned to work one full year later, on July 25, 1991, but then worked only until shoulder pain caused him to stop on February 13, 1992. One of the doctors who previously had treated Amos referred him to Dr. Larry Pedegana, an orthopedic surgeon who specializes in the treatment of upper extremities. None of the parties disputes Dr. Pedegana's qualifications, which include service as a physician and consultant for major league baseball and professional football teams.

Dr. Pedegana discovered a small spur under the surface of Amos's right acromion and diagnosed impingement syndrome secondary to the spur. He recommended surgery to remove the spur and to decompress the shoulder. Dr. Pedegana testified at his deposition approximately one year later that the proposed surgery probably would improve Amos's symptoms and physical functioning and obviate any work restrictions. Absent the surgery, Dr. Pedegana would have restricted Amos to activity below shoulder level if his condition remained as it was at the time of treatment.

After obtaining Dr. Pedegana's recommendation, Sea–Land arranged for two other orthopedic surgeons to examine Amos. The first, Dr. Kenneth Sawyer, acknowledged that the surgery might improve Amos's symptoms, but did not recommend it. His report dated August 11, 1992 explained his position:

... although the proposed surgery may improve the symptoms in his right shoulder, it is unlikely that he will be asymptomatic. It is also unlikely that he would be able to tolerate returning to his previous work if he cannot do so at the present time because of ongoing symptoms in his left shoulder and back and because the proposed surgery will probably not make his right shoulder totally asymptomatic.

The second examining physician, Dr. Stephen Sears, who characterized his practice as 30 percent spinal problems, 30 percent knee problems, and 40 percent "a little bit of everything," examined Amos on April 7, 1993. He reported the following:

... it is noted that the patient on this date does not have a clinical impingement syndrome. I also doubt that surgery will improve the patient's right shoulder complaints, and if I were the surgeon involved, I would be somewhat nervous about per-

forming surgery on this individual.... Mr. Amos has no ratable impairment as a result of his employment, to include the events of July 25, 1990. Again, because of the patient's past history, I do have serious doubts as to his ability to work and tolerate his subjective complaints.

In his deposition one week later, Dr. Sears elaborated on his opinion:

I can't say 100 percent that this individual can't be helped with surgery of his shoulder. There's a judgment decision here. But in my opinion he will not be helped with surgery.... I would be nervous about performing the surgery, primarily because I don't like doing surgery and have the patient come back and say Dr. Sears, I'm no better. And I think there's a good likelihood that this will happen.... I don't think he's going to be any better from this surgery. You know I could be wrong, but that's my opinion.... So I quite frankly look at the shoulder as a delaying tactic with regards to any surgery that might be done. I think you're going to have to face the central issues sooner or later and now's a good time. To me the issue is can this individual work in the job that he had or can he not? I think he can and I think that's the central issue that's going to have to be faced and I think surgery would merely put off dealing with that issue.

Sea–Land denied authorization for the shoulder surgery, and Amos requested a hearing. He claimed an entitlement to the shoulder surgery pursuant to section 907 of the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950 (1998), and temporary total disability benefits pursuant to section 908 until he reached the point of maximum medical improvement.[1] Alternatively, if the ALJ decided he already had reached the point of maximum medical improvement and would not benefit from surgery, Amos sought permanent partial disability benefits pursuant to section 908.

The ALJ made the following findings of fact and conclusions of law: (1) the accident on July 25, 1990 caused Amos's shoulder and back injuries; (2) the requested shoulder surgery was not reasonable and appropriate medical treatment for Amos's injury; and (3) Amos was entitled to permanent partial disability benefits corresponding to only a five percent loss of wage earning capacity. The ALJ's decision was based on her determination that Dr. Pedegana, Amos's treating physician, was less persuasive than Dr. Sears, one of the examining physicians. The ALJ explained why she chose to accept Dr. Sears's opinion and reject that of Dr. Pedegana:

The fact Dr. Pedegana is involved with claimant on a treating basis ... has been weighed in this evaluation, as has the fact employer's consultants examined and evaluated in connection with a controverted and litigated claim.... Dr. Sears' report reflects a far fuller elicitation of the claimant's complaints and history, a far fuller medical and orthopedic examination, inclusive of his back. Dr. Pedegana's reports appear more limited and cursory in comparison.... Further, Dr. Sears' evaluation is more current than that of Dr. Pedegana, a year earlier, and is the most current in the records.... Moreover, Dr. Sears' explanations on deposition impressed as reflecting not only a fuller appreciation for claimant's total past orthopedic treatment and medical history, and a more detailed orthopedic examination, but also a more thoughtful, careful weighing of all he was presented with.... While Dr. Sears may treat and practice in eastern WA and Dr. Pedagana's CV is impressive, both are Board-certified and what is more weighty in analysis is the thoroughness and completeness of the expert's examination and report on the particular injured worker.

Amos petitioned for review by the Benefits Review Board, but because Amos's petition was pending before the Board for more than one year on September 12, 1996, the ALJ's Decision and Order was considered affirmed and treated as the Board's final order pursuant to Public Law 104–134.

---

1. Although Amos contends in his brief that he is entitled to a CAT scan, Dr. Pedegana, who initially recommended it, later stated that it no longer was necessary because Amos had been given a tomogram instead. Since this point is uncontradicted, the CAT scan issue now is moot.

Amos raises three interrelated issues on appeal to this court: (1) whether the ALJ erred in affording greater weight to the opinion of Sea–Land's examining physician, Dr. Sears, than to the opinion of the treating orthopedic surgeon, Dr. Pedegana; (2) whether the ALJ erred in concluding that Amos was not entitled to shoulder surgery; and (3) whether the ALJ erred in concluding that Amos was not entitled to temporary total disability benefits, was capable of returning to his former occupation, and was entitled to benefits corresponding to only a five percent loss of wage earning capacity.

## STANDARD OF REVIEW

Because the Benefits Review Board affirmed the ALJ's decision without adjudication pursuant to Public Law 104–134, we review the ALJ's decision directly. *Jones Stevedoring Co. v. Director, OWCP,* 133 F.3d 683, 687 (9th Cir.1997). We must accept the ALJ's findings unless they are contrary to law, irrational, or unsupported by substantial evidence. *Kashuba v. Legion Ins. Co.,* 139 F.3d 1273, 1275 (9th Cir.1998). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

## DISCUSSION AND CONCLUSION

Where an injured employee seeks benefits under the LHWCA, a treating physician's opinion is entitled to special weight. As we have explained in the context of Social Security cases, "[w]e afford greater weight to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989) (*quoting Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir.1987)). The same logic applies in cases involving industrial injuries.

Section 907 of the LHWCA requires that employers furnish medical care to longshore and harbor workers injured on the job, and it specifically guarantees the right of employees to select their own doctors.

While the Secretary of Labor is authorized under the Act to supervise medical care rendered to injured employees, neither the employer nor the Secretary stands in loco parentis to injured employees. Nothing in the Act requires injured workers to abdicate the right to make their own decisions about their medical care. Although the employer is not required to pay for unreasonable and inappropriate treatment, when the patient is faced with two or more valid medical alternatives, it is the patient, in consultation with his own doctor, who has the right to chart his own destiny. *See* 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 13.22(e) (1998) ("In general, if claimant gets conflicting instructions on treatment from different doctors, and chooses to follow his or her own doctor's advise, this is not unreasonable.").

In the instant case, Amos's treating physician, Dr. Pedegana, an orthopedic surgeon with indisputable credentials, believed that surgery would help his patient. Drs. Sawyer and Sears, both well qualified orthopedic surgeons, favored a more conservative course. But neither Sawyer nor Sears established that Pedegana's recommendation was unreasonable. To the contrary, Dr. Sawyer opined that the surgery might offer Amos some symptomatic relief, and Dr. Sears acknowledged that his preference against surgery in Amos's case was not open-and-shut, but a judgment call. As the opinion of the treating physician, Dr. Pedegana's recommendation was entitled to special deference, and since that opinion was not shown by the testimony of the other doctors to be unreasonable, the ALJ's choice of one reasonable option over the other was not hers to make. It was the patient's. The ALJ's rejection of Dr. Pedegana's surgical recommendation as not reasonable and appropriate was not supported by substantial evidence.

Amos is entitled to temporary total disability benefits until the employer provides the requested surgery and it is determined that Amos has reached maximum medical improvement. We thus remand to the ALJ with instructions to grant Amos's request for surgery and award appropriate temporary total disability benefits.

PETITION GRANTED. REVERSED AND REMANDED.