# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

--------

No. 97-60508

--------

## LOUISIANA INSURANCE GUARANTY ASSOCIATION

Petitioner

VERSUS

## ROBERT BUNOL; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR

Respondents

--------

Petition for Review of an Order
of The Benefits Review Board

--------

May 12, 2000

Before HIGGINBOTHAM and SMITH, Circuit Judges, and FALLON, District Judge.[*]

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

FALLON, District Judge:

The Louisiana Insurance Guaranty Association ("LIGA") appeals from a decision by the Benefits Review Board ("BRB") of the United States Department of Labor concerning benefits awarded to

Robert Bunol pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA"). Because we find that substantial evidence supports the determination of the BRB, we affirm.

## I.

Robert J. Bunol, Sr. was a diesel mechanic who was injured in February and again in August of 1979 while working for the George Engine Company in Harvey, Louisiana. He suffered injuries to his back and spine and underwent surgery on April 28, 1980. Following his operation, Bunol worked in the repair shop, became an instructor, and ultimately resumed his full duties six months to a year later.

In March, 1988, Bunol was laid off from his job when the George Engine Company went bankrupt. He then began working for his brother's insurance company in September, 1988 until it was sold in August, 1990. Since 1990, he has not returned to any work.

Bunol filed a complaint for benefits under the LHWCA after losing his job at the insurance company. An administrative law judge ("ALJ") found that Bunol failed to provide his employer with sufficient notice of the February, 1979 injury and therefore was not entitled to disability benefits. The ALJ did, however, award Bunol benefits related to his August, 1979 claim. Bunol received temporary total disability benefits at a compensation rate of $306.91, based on a weekly wage of $460.37, for the period between the date of the accident until December 18, 1980. Thereafter, Bunol was entitled to permanent partial disability benefits at a weekly rate of $146.66 based on a residual wage capacity of $240.38.

Bunol sought compensation from LIGA because his employer went out of business.[1] LIGA moved to reconsider the ruling of the ALJ, but its motion was denied. On appeal, the BRB remanded the case to another ALJ who granted LIGA's request for modification. The second ALJ ordered LIGA to pay compensation for temporary total disability benefits from August 1, 1979 through September 4, 1979, and from April 28, 1980 through July 9, 1980 based on an average weekly wage of $452.13.

The ALJ further ordered LIGA to pay permanent partial disability benefits for the period from September 1, 1988 through August 1, 1990 based on an average weekly wage of $452.12 and a residual earning capacity of $188.25. For August 2, 1990 to August 31, 1993, Bunol was awarded a residual earning capacity of $150.42, and from September 1, 1993 onward a residual earning capacity of $160.80. The second ALJ, however, relieved LIGA of its duty to pay benefits for the period from 1980 to 1988.

Bunol appealed and LIGA cross appealed the second ALJ decision. The BRB affirmed the findings of the ALJ and also reinstated the award of the first ALJ for permanent partial disability compensation for the period from 1980 through 1988. LIGA now appeals the second BRB decision to this court.

## II.

We review an appeal from a decision by the BRB *de novo. Sketoe v. Exxon Co.*, *USA*, 188 F.3d 596, 597 (5th Cir. 1999). In reviewing a decision of the BRB, we only consider whether the BRB correctly found

---

[1] The Louisiana Legislature created LIGA to cover claims against bankrupt employers and their insurers. *See* La. Stat. Ann. § 22:1375, *et. seq.*

that the ALJ's findings of fact are supported by substantial evidence and consistent with the law. *See Avondale Indus. v. Director, OWCP* 977 F.2d 186, 189 (5th Cir.1990). "[W]e may not substitute [our] judgment for that of the ALJ, nor may we reweigh or reappraise the evidence, instead we inquire whether there was evidence supporting the ALJ's factual findings." *Boland Marine & Manufact. Co. v. Rihner*, 41 F.3d 997, 1002 (5th Cir. 1995) (quoting *Empire United Stevedores v. Gatlin*, 936 F.2d 819, 822 (5th Cir. 1991)). Therefore, "we must affirm decisions that conclude correctly that the ALJ's findings are supported by substantial evidence and are in accordance with the law." *Darby v. Ingalls Shipbuilding, Inc.*, 99 F.3d 685, 688 (5th Cir. 1996).

### A.

LIGA argues that the evidence in the record is insufficient to support the conclusions of the BRB. First, LIGA suggests that the BRB erred in determining the causal relationship between Bunol's disability and any work-related accident.[2] LIGA next asserts that sufficient evidence supports neither the BRB's findings regarding the nature and extent of Bunol's disability nor its determination of the average weekly wage afforded to Bunol. LIGA then argues that Bunol was not injured on a situs covered by the LHWCA. Finally, LIGA disputes the BRB's determination concerning Bunol's residual wage earning capacity and demonstration of suitable alternative employment.

### B.

We first consider whether the BRB

---

[2] We need not reach the issue of whether the BRB's decision was issued timely because Bunol adopts the argument of LIGA in its brief.

erred in determining the causal relationship between Bunol's disability and any work-related accident. When Bunol claimed compensation under the LHWCA, the law afforded him a presumption that his injury arose out of and in the course of his employment. *See* 33 U.S.C. § 920(a). Once the presumption is invoked, the burden shifts to the employer to rebut the presumption with substantial evidence that his condition was not caused or aggravated by his employment. *See Noble Drilling Co. v. Drake*, 795 F.2d 478, 481 (5th Cir. 1986). If the employer meets this standard, then the presumption disappears. *Id.*

LIGA fails to overcome its burden. The evidence considered by the ALJ and reviewed by the BRB shows that Bunol went to see his doctor either the day of or the day after his July 31, 1979 injury. He reported the injury to the employer who in turn filed a report. Although LIGA contends that the testimony of Bunol's doctor indicates that he thought he was treating the injury of February, 1979, the ALJ as fact finder determines the credibility of witnesses and decides issues of conflicting evidence. *See Avondale Indus.*, 977 F.2d at 189. LIGA presents no evidence to challenge the ALJ determination, and we therefore find the conclusion of the BRB to be supported by substantial evidence.

### C.

LIGA next contends that the evidence considered by the ALJ and the BRB is insufficient to sustain a finding that Bunol had worked in pain and with a decreased earning capacity sufficient to justify partial disability benefits for the period from 1980 to 1988.

Bunol bears the initial burden of demonstrating that he cannot return to his usual work in order to establish a *prima*

3

*facie* case for total disability. If he meets this burden, then his employer must establish the availability of suitable alternative employment. *See P&M Crane Co.*, 930 F.2d 424 (5th Cir. 1991). Even if able to work, Bunol may be found to be totally disabled if he is working with extraordinary effort and in excruciating pain. *See Argonaut Ins. Co. v. Patterson*, 846 F.2d 715 (11th Cir. 1988). These factors are also relevant in determining an award of permanent partial disability and wage-earning capacity after an injury. *See* 33 U.S.C. § 908(c)(21)(h).

Both ALJs found that Bunol worked in substantial pain from 1980 to 1988. In its decision, the BRB notes that Bunol testified that he worked in constant pain and that his doctor placed restrictions on his physical activities at work. LIGA offers no evidence to rebut the findings of the BRB. Therefore, according to our standard of review, we find that the BRB properly found that Bunol worked in pain and is entitled to benefits for the period from 1980 to 1988.

### D.

LIGA further insists that the BRB improperly calculated Bunol's average weekly wage to determine his benefits. The methods for calculating average weekly wages are listed at 33 U.S.C. section 910. LIGA contends that the ALJ should have applied section 910(a) rather than section 910(c) to determine his average weekly wage because Bunol worked "substantially the whole of the year." *See* 33 U.S.C. § 910(a) (providing the computation formula for injured employees who worked "during substantially the whole of the year immediately preceding injury"). *Id.*

The ALJ determined that section 910(c) applied because the forty-two weeks that Bunol did work failed to fairly represent an entire year of work. Therefore, the ALJ applied the methodology of section 910(c) that provides a formula to calculate average weekly wages when the other standards "cannot reasonably and fairly be applied." *Id.* § 910(c). The BRB affirmed.

The courts give broad discretion to ALJs in determining appropriate wage awards. *See National Steel & Shipbuilding Co. v. Bonner*, 600 F.2d 1288, 1292 (9th Cir. 1979). LIGA offers no evidence to rebut the conclusion of the ALJ. Rather, LIGA suggests an alternative method for calculating his wage. The ALJ made no error of law by applying section 910(c) and found that the evidence showed Bunol had not worked substantially the whole year and therefore did not satisfy the section 910(a) criteria. Thus, we do not find that the BRB erred in affirming the ALJ decision.

### E.

LIGA additionally asserts that sufficient evidence does not demonstrate that Bunol's injury occurred on a covered situs. Section 3(a) of the LHWCA restricts compensation awards to injuries "occurring on the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)." 33 U.S.C. § 903(a).

LIGA claims that evidence exists to support a finding by the ALJ that Bunol's accident occurred in a field in Baton Rouge or on a dock in Harvey. The ALJ, however, found that the evidence showed that the injury occurred on the dock. The BRB further concluded that Bunol's employer conducted maritime activity at this facility. Again, the ALJ weighed conflicting evidence

4

and rendered a decision that a reasonable mind might accept as adequate to support a conclusion. *See Avondale Indus.*, 977 F.2d at 189 (defining "substantial evidence" as evidence that provides a substantial basis of fact from which can be reasonably inferred) (internal quotation omitted). Therefore, we find that the evidence supports the BRB's determination that Bunol's injury occurred on a situs covered by the LHWCA.

F.

Finally, LIGA disputes the BRB's determination concerning Bunol's residual wage earning capacity and demonstration of suitable alternative employment.[3] LIGA again provides no evidence to challenge the findings of the BRB. We may not second-guess the determinations of the ALJ and the BRB absent a showing that substantial evidence does not support their conclusions. *See Rihner*, 41 F.3d at 1002. Accordingly, we find that the record supports the fact-finding of the ALJs and the determination of the BRB.

Respondent's motion to dismiss the petition for review is MOOT.

AFFIRMED.

---

[3] At oral argument, LIGA's counsel stated that LIGA challenges, on appeal, only the BRB's factual determination and raises no issue as to LIGA's duty, under these facts, to find suitable alternative employment. Accordingly, we decide only the factual issue.