**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

———————————

No. 01-60638

(Summary Calendar)

———————————

NEW ORLEANS STEVEDORING COMPANY; SIGNAL
MUTUAL INDEMNITY COMPANY,

Petitioners,

versus

WILFORD NAILER; DIRECTOR, OFFICE OF WORKER'S
COMPENSATION PROGRAMS, US DEPARTMENT OF LABOR,

Respondents.

———————————

Petition for Review of a Final Order of the
Benefits Review Board
BRB No. 00-0985

———————————

April 1, 2002

Before JONES, SMITH and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

New Orleans Stevedoring Co. and Signal Mutual Indemnity Assn., Ltd. (collectively,

———————————

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

"Petitioners") appeal from a decision by the Benefits Review Board ("BRB") of the United States Department of Labor concerning benefits awarded to Wilford Nailer pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq. On appeal, we must determine whether the BRB's decision affirming the finding of the Administrative Law Judge ("ALJ") that Nailer is permanently and totally disabled is supported by substantial evidence.

In reviewing a decision of the BRB, we consider only whether the BRB correctly found that the ALJ's findings of fact were supported by substantial evidence and consistent with law. *La. Ins. Guar. Ass'n v. Bunol*, 211 F.3d 294, 296 (5th Cir. 2000). "The findings of the ALJ must be accepted unless they are not supported by substantial evidence in the record considered as a whole or unless they are irrational." *Mijangos v. Avondale Shipyards, Inc.*, 948 F.2d 941, 944 (5th Cir. 1991).

Nailer was employed by New Orleans Stevedoring Co. as a longshoreman when he was injured during the course of his employment. Nailer was loading containers in the hold of a vessel when a thousand-pound jack began to roll and pinned him under a pallet board. As a result, Nailer sustained testicular and back injuries. Although the testicular injury healed within a few months, and an initial orthopedic examination revealed no objective evidence of a back injury, Nailer's back continued to bother him and he sought treatment from an orthopedic surgeon, Dr. Billings. Dr. Billings treated Nailer for the next two years, concluding that he suffered from symptoms consistent with nerve root irritation exacerbated by arthritic changes. At the time of his injury, Nailer was 57 years old, with an approximate IQ of 59 (mildly mentally retarded), and a sixth-grade education. He is functionally illiterate. Nailer has held previous positions as a freighthandler, longshoreman, construction worker, truckdriver, skycap, gas station attendant, and bulldozer operator. From the time of his injury until the hearing before the ALJ, Nailer received temporary total disability payments,

and then permanent partial disability payments, from his employer.

The Petitioners allege that the ALJ erred in finding Nailer to be totally and permanently disabled, as opposed to partially and permanently disabled. *See* 33 U.S.C. § 908(a) & (c) (West 2001). In order to make out a prima facie case of total disability, a claimant must show he is unable to return to his former employment due to his injury. *New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031, 1041 (1981). Once a prima facie case is shown, the burden shifts to the claimant's employer to establish the existence of suitable alternative employment. *Id.* Such a showing will defeat a claim of total disability. The claimant must have a realistic opportunity to obtain such alternative employment, based on factors such as claimant's age, education, work history, and mental and physical capacities. *Id.* at 1042. The ALJ found that Nailer had established his prima facie case of total disability, and that the Petitioners had failed to show the availability of suitable alternative employment, and therefore concluded that Nailer was totally and permanently disabled.

The part ies agree that Nailer has established a prima facie case of total disability, as he is unable to return to his former work as a longshoreman. At the hearing, the parties presented conflicting evidence about the availability of alternative employment. Petitioners presented evidence, based on a labor market survey conducted by their vocational specialist, that eight alternative jobs were available, including positions as a sorter, sewing machine operator, embroidery machine operator, linen attendant, and assembler. Nailer's own vocational expert reviewed these positions and concluded that only one, a part-time parking lot attendant position, might be appropriate, although he was skeptical that Nailer would be able to handle the responsibility of handling cash payments. He dismissed the other positions, even though several of them had been initially approved by Dr. Billings, because they required fine manual dexterity skills, long work hours (over six hours),

literacy skills, a high-school diploma, or extended periods of sitting or standing. Nailer's expert also stated that if Nailer's severe chronic pain persisted, he would be unable to retain any job.

In addition, the ALJ considered the testimony of several physicians. Dr. Billings testified about Nailer's condition and treatment, and the limitations he had placed on Nailer's future employment. Specifically, the doctor stated that Nailer could not perform repetitive lifting, bending or stooping, could not drive while on pain medication if it made him sleepy, and could not stand or sit for a period longer than three hours. The urologist who treated Nailer's groin injury also testified, along with the orthopedist who initially saw Nailer, and who found no objective evidence of a back injury. Finally, Nailer himself testified about the severe and ongoing pain he had experienced, which prevented him from working and required high doses of pain medication.

After considering all of the evidence, the ALJ found that the Petitioners' vocational specialist did not take all of Nailer's limitations into account when compiling the list of suitable alternative jobs. In particular, the ALJ concluded that the "[vocational expert's] labor market survey did not take into consideration limitations placed on [Nailer's] capacity to work by [his physician] as well as [Nailer's] significant cognitive limitations." Not only did the proposed jobs require the development of new skills, they were, with one exception, full-time positions which would exceed the time limits for sitting and standing placed on Nailer by his doctor. The ALJ also relied on Nailer's testimony that he was in constant pain, which was supported by the medical evidence presented by Dr. Billings. The ALJ ultimately determined that the Petitioners had failed to carry their burden in demonstrating the availability of suitable alternative work, and found Nailer to be permanently and totally disabled.

We find the ALJ's conclusion to be supported by the substantial evidence in the record as a

whole. The ALJ wrote a careful and thorough opinion, in which he considered the expert testimony presented by both parties as well as Nailer's own testimony, along with the medical evidence. *See Mendoza v. Marine Pers. Co., Inc.*, 46 F.3d 498, 500 (5th Cir. 1995) (stating that the ALJ's "selection among inferences is conclusive if supported by the evidence and the law"). The ALJ properly took into account whether Nailer had the requisite mental ability and skills to successfully perform the required work when evaluating the Petitioners' evidence of suitable alternative employment. *See Ledet v. Phillips Petroleum Co.*, 163 F.3d 901, 905 (5th Cir. 1998). His conclusion, in light of the evidence presented about the available alternate positions and their requirements, and about Nailer's physical and mental limitations, was not unreasonable.

Moreover, we agree with the BRB's conclusion that even if the Petitioners had successfully established that Nailer was capable of obtaining other employment, a finding of constant debilitating pain can support a finding of total disability. *Mijangos*, 948 F.2d at 944-45 (holding credible testimony of pain can warrant an award of compensation even if a claimant might be physically capable of performing certain types of work activity). Nailer testified that he was in constant pain, and was unable to work as a result. The ALJ credited this testimony, and we are not permitted to reevaluate such credibility determinations. *Id.* at 945 (reversing BRB when it attempted to disregard credibility determinations of ALJ on review).

We conclude that the finding of total and permanent disability is supported by substantial evidence in this case, and AFFIRM the decision of the BRB.