IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-60558

_____

SONAT OFFSHORE DRILLING, INC.

Petitioner

v.

AVONDALE INDUSTRIES, INC., DIRECTOR, OFFICE OF WORKER'S
COMPENSATION PROGRAMS, US DEPARTMENT OF LABOR

Respondents

-------------------------------------------------------------
On Petition for Review of an Order of the
Benefits Review Board
-------------------------------------------------------------
May 13, 2002

Before SMITH, BENAVIDES, and PARKER, Circuit Judges.

PER CURIAM:[*]

Edmond Rogers ("Rogers")[1] filed claims for compensation for hearing loss under the

Longshore and Harbor Workers' Compensation Act [33 U.S.C. § 901 et seq.] ("LHWCA")

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1]Rogers passed away on January 3, 1998. His widow, Dorothy Rogers, was substituted as party claimant.

against petitioner Sonat Offshore Drilling, Inc. ("Sonat")[2] and respondent Avondale Industries, Inc. ("Avondale"). After a hearing, the administrative law judge (the "ALJ") concluded that Rogers had a valid LHWCA claim against Sonat in light of its findings that Rogers was an employee covered by the LHWCA while employed by Sonat, his last maritime employer, and that Rogers was exposed to injurious stimuli during that employment. The Benefits Review Board (the "BRB") affirmed and Sonat filed this petition, contending that these findings are erroneous. As we find no error, we deny the petition.

## I.

## BACKGROUND

In 1995 an audiogram was performed on Rogers and it was determined that Rogers suffered from hearing loss in both ears.

Rogers worked for Avondale on-and-off between 1942 and 1951 as a machinist. As a machinist he was exposed, without hearing protection, to noisy tools during his employment. While working for Avondale, Rogers was covered by the LHWCA.

Rogers worked for Sonat between 1951 and 1965. It is unclear what jobs Rogers held during this time because Rogers died before the hearing and was not deposed. Furthermore, Sonat destroyed Rogers' employment records in 1985 as part of a purge of old records.

## II.

## ANALYSIS

"We review an appeal from a decision by the BRB de novo. In reviewing a decision of the

---

[2]Rogers was actually employed by predecessors of Sonat, Southern Production Company and The Offshore Compmay, and Sonat has subsequently become Transocean Offshore.

BRB, we only consider whether the BRB correctly found that the ALJ's findings of fact are supported by substantial evidence and consistent with the law. We may not substitute our judgment for that of the ALJ, nor may we reweigh or reappraise the evidence; instead we inquire whether there was evidence supporting the ALJ's factual findings. Therefore, we must affirm decisions that conclude correctly that the ALJ's findings are supported by substantial evidence and are in accordance with the law." Louisiana Ins. Guar. Ass'n v. Bunol, 211 F.3d 294, 296 (5th Cir. 2000).

## A.      Jones Act Seaman

Sonat contents that the ALJ erred in finding that Rogers was covered by the LHWCA in light of its evidence that he was a Jones Act seaman.

In order to be covered by the LHWCA, a claimant must meet the status and situs requirements of the Act. See 33 U.S.C. § 902(3); 33 U.S.C. § 903(a); Miles v. Delta Well Surveying Corp., 777 F.2d 1069, 1071 (5th Cir. 1985). The LHWCA excludes from coverage a "master or member of a crew of any vessel." See 33 U.S.C. § 902(3)(G). "As the Court has stated on several occasions, the Jones Act and the LHWCA are mutually exclusive compensation regimes: 'master or member of a crew' is a refinement of the term 'seaman' in the Jones Act; it excludes from LHWCA coverage those properly covered under the Jones Act." Chandris, Inc. v. Latsis, 515 U.S. 347, 355 (1995).

The essential requirements for seaman status are twofold. Id. at 368. First "an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission." Id. Second, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.

3

Id. "A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." Id. at 371.

The ALJ concluded that while Sonat's evidence supported a finding that Rogers spent some of his time as a member of a crew, that evidence did not support a finding that his connection to Sonat's fleet was substantial in duration. The BRB concluded that this finding was rational and supported by substantial evidence. We agree. There was evidence that Rogers held numerous jobs (including painter, chipper, radio operator, motorman, helper and water-maker) over 14 years on various submersible rigs, jack-up rigs, fixed platforms and tender vessels. There was no evidence, however, regarding how much time Rogers spent on any given vessel doing any given job. Clearly Rogers worked on non-vessels, Kerr McGhee Corp. v. Ma-Ju Marine Serv. Inc., 830 f.2d 1332, 1336 (5th Cir. 1987) (noting that fixed platforms are not vessels), and there was evidence that the lion's share of the work performed by Rogers could be performed both on vessels and non-vessels. In its attempt to demonstrate otherwise, Sonat simply speculates as to the amount of time spent on each of the five rigs Rogers identified in an interrogatory answer as those on which he worked. The ALJ did not err in rejecting Sonat's speculative analysis.

**B.     Exposure to Injurious Stimuli**

In order to recover from Sonat under LHWCA, Rogers had to prove that he was exposed to injurious stimuli at Sonat that could have caused the injury to his hearing. See Avondale Indus. v. Director, OWCP, 977 F.2d 186, 190 (5th Cir. 1992) ("Once [a claimant] has demonstrated a prima facie entitlement to benefits by showing that he sustained physical harm and that conditions existed at work which could have caused the harm, he has established his exposure to injurious stimuli during employment covered under the LHWCA, and there exists a compensable claim.").

4

Sonat contents that the ALJ finding that Rogers was exposed to such stimuli was unsupported by substantial evidence. We disagree. The ALJ relied on Rogers' interrogatory answer, in which he stated that his work as a "motor man" at Sonat exposed him to loud motor noise and Sonat employee testimony that painters and helpers, other jobs held by Rogers, were exposed to potentially injurious noise. Finally, the ALJ found that, contrary to Sonat's assertion, there was no evidence that Rogers used hearing protection, noting that a Sonat employee testified that, while use of hearing protection was encouraged, it was not required. We conclude that this evidence constitutes "substantial evidence" supporting the finding of the ALJ that Rogers was exposed to injurious stimuli.

## C.    Last Employer Rule

Finally, Sonat contends that pursuant to the "Last Employer Rule," Avondale had the burden of proving that Rogers was covered by the LHWCA, i.e., he was not a Jones Act seaman. This contention is unsupported by authority or argument.

The last employer rule is "a judicially created rule for allocating liability among employers in cases where an occupational disease develops after prolonged exposure." Avondale Industries, 977 F.2d at 190. Pursuant to the last employer rule "[t]he employer during the last employment in which the claimant was exposed to injurious stimuli, prior to the date upon which the claimant became aware of the fact that he was suffering from an occupational disease arising naturally out of his employment, should be liable for the full amount of the award." Fulks v. Avondale Shipyards, Inc., 637 F.2d 1008, 1012 (5th Cir. 1981).

Sonat relies solely on the fact that in Avondale Industries we held that an employer attempting to shift liability pursuant to the last employer rule has the burden of demonstrating that

5

the claimant was exposed to injurious stimuli while working for a subsequent employer. Avondale Indus., 977 F.2d at 190. Sonat contends that if Avondale had that burden in Avondale Industries it has that burden in this case. Sonat misreads Avondale Industries. Avondale Industries stands for the unremarkable proposition that once a claimant establishes a prima facie case of entitlement to benefits as against an employer, the burden shifts to the employer to rebut the presumption. Id. ("Once [a claimant] demonstrate[s] a prima facie entitlement to benefits... [the] [e]mployer can then rebut this presumption by showing...that [the] employee was exposed to injurious stimuli while performing work covered under the LHWCA for a subsequent employer."); Port Cooper/T.Smith Stevedoring Co., Inc. v. Hunter, 227 F.3d 285, 288 (5th Cir. 2000).

Avondale Industries is clearly distinguishable, however, because in Avondale Industries the claimant had not established a prima facie case of entitlement of benefits against the subsequent employer. Here, the ALJ found that Rogers established a prima facie case of entitlement to benefits as against Sonat. Accordingly, it was Sonat's burden to demonstrate it was not the last responsible employer. Avondale Industries, 977 F.2d at 190.

Furthermore, placing the burden on Avondale in Avondale Industries was consistent with the rationale behind the last employer rule because the rule was created to make collection of benefits less time consuming for claimants, and it was being asserted by Avondale to avoid payment to a claimant. Id. ("The last employer rule is not a rule of compensability."). However, this rationale has no force when the rule is being applied as between two employers who have been found liable. Finally, it seems equitable to place the burden on Sonat to establish Rogers' seaman status as it is arguably in a better position than Avondale to do so.

6

## III.

## CONCLUSION

Accordingly, Sonat's petition is hereby DENIED.